**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AVID IDENTIFICATION SYSTEMS, INCORPORATED, | § § § | |
| vs. | § § | CASE NO. 2:04-CV-183 |
| PHILLIPS ELECTRONICS NORTH AMERICA CORPORATION, ET AL. | § § § | |

**MEMORANDUM OPINION AND ORDER**

**1.     Introduction**

Datamars SA ("Datamars") and The Crystal Import Corporation ("Crystal") (collectively, "the defendants"), have filed a motion (#377) to render U.S. Patent No. 5,235,326, which is assigned to the plaintiff, Avid Identification Systems, Incorporated ("Avid"), unenforceable for inequitable conduct. For the reasons discussed herein, the court grants the defendants' motion (#377) and declares U.S. Patent No. 5,235,326 unenforceable.

**2.     Background Facts and Procedural Posture**

The '326 patent, entitled "Multi-Mode Identification System," was filed on August 15, 1991,[1] by inventors Michael Beigel, Nathaniel Polish, and Robert Malm. In addition to his inventive capacity, Robert Malm also served as the prosecuting attorney for the '326 patent. According to assignment records at the U.S. Patent and Trademark Office ("PTO"), each inventor assigned his prospective rights in the '326 patent to Avid[2] in August 1991. Dr. Hannis Stoddard is the president

---

[1]     The 102(b) critical date for the '326 patent is therefore August 15, 1990.

[2]     The inventors originally assigned their interests to Avid Marketing, Inc. In August 1999, Avid Marketing, Inc. assigned its rights in the '326 patent to Avid Identification Systems, Inc.

of Avid, and was acting in this capacity during the prosecution of the '326 patent.

The '326 patent is directed to radio frequency identification ("RFID") tags and readers, the two components to an electronic identification system. This type of identification system has a number of applications, including the identification of pets and livestock. For example, a unique tag can be implanted in an animal, such as a bird, and a reader can thereafter identify the animal by communication with and recognition of the unique tag identifier. A key object of the '326 patent is to provide a single reader that will read tags of different designs and manufacturers.

At trial, Avid accused the defendants of unfair competition, and of infringing U.S. Patent Nos. 5,214,409, 5,499,017, and 5,235,326 ("the '326 patent"). In response, the defendants alleged that the '326 patent was invalid in light of pre-critical date reader and tag sales by Avid. The jury upheld the validity of the asserted claims of the '326 patent, found the defendants liable for the willful infringement of claims of each patent, and found the defendants liable on Avid's unfair competition claim. After the jury trial, the parties agreed to forego a bench trial on inequitable conduct and submitted this issue to the court on the trial record, with supplemental briefing by the parties. The defendants' inequitable conduct claim is now ripe for decision.

**3.      The Law of Inequitable Conduct**

"A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *see also* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the

---

The court's use of the term "Avid" encompasses both corporate entities.

Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.").

The materiality of information withheld during prosecution may be judged by the "reasonable examiner" standard. *See id.* at 1316. That is, "[m]ateriality . . . embraces any information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1382 (Fed. Cir. 1998) (citations omitted). Moreover, "[i]nformation concealed from the PTO may be material even though it would not invalidate the patent." *Li Second Family LP v. Toshiba Corp.*, 231 F.3d 1373, 1380 (Fed. Cir. 2000). "However, a withheld otherwise material [piece of information] is not material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner." *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2009). "[T]he scope and content of prior art and what the prior art teaches are questions of fact." *Id.*

"The intent element of the offense is . . . in the main proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred." *Akron Polymer*, 148 F.3d at 1385. "However, inequitable conduct requires not intent to withhold, but rather intent to deceive. Intent to deceive cannot be inferred simply from the decision to withhold [information] where the reasons given for the withholding are plausible." *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003). In addition, "a finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown*

*Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc in relevant part).

"The party asserting inequitable conduct must prove a threshold level of materiality and intent by clear and convincing evidence." *Digital Control*, 437 F.3d at 1313. "The court must then determine whether the questioned conduct amounts to inequitable conduct by balancing the levels of materiality and intent, 'with a greater showing of one factor allowing a lesser showing of the other.'" *Id.* (quoting *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001)).

**4.     Discussion**

Avid argues that its Standard Reader and tag incorporating the e5500B integrated circuit are not material because there is no evidence that these products were sold or publicly demonstrated in the United States prior to the critical date for the '326 patent. The court rejects this argument and finds that the Standard Reader and e5500B integrated circuit and tag are 102(b) prior art.[3] As an initial matter, the court finds that Dr. Hannis Stoddard's trial and deposition testimony is simply not credible on key issues. This finding flows from Stoddard's conspicuous inability to recall facts while testifying, combined with his refusal to acknowledge incontrovertible events.[4] Because

---

[3]     Additionally, to the extent Avid argues that its reader and tag were not successfully reduced to practice until after the critical date, and that any such pre-critical date sales were therefore experimental, the court finds that a reasonable examiner would find such information material to patentability because it is relevant to determining whether the patented devices were on sale before the critical date. *See Destron/IDI, Inc. v. Electronic Identifications Devices, Inc.*, Nos. 96-1382, 96-1383, 96-1392, 96-1393, 96-1394, 96-1395, 1997 WL 414646, at *4 (Fed. Cir. July 24, 1997) (unpublished).

[4]     Stoddard, for example, refused to acknowledge that he even gave an interview to a newspaper prior to the close of September1989, where he indicated that he had implanted 5,000 tags in prize hunting falcons. *See* Brief of Defendants, Exhibit J at 122-23 (transcript of Stoddard's trial testimony); DTX 11. The record however, indicates that Avid had received a copy of the article as

4

Stoddard's testimony is not dependable, the court must look to Avid's corporate documents, which provide the court with a contemporaneous record of the company's activities.

One such document is a facsimile transmission, dated April 4, 1990, from Doug Hull to R. Sander and H. Meier. *See* DTX 18. The facsimile provides proof, nearly conclusive, that Avid was offering its Standard Reader and e5500B tag for sale in the United States well in advance of the critical date. The facsimile states:

> Hannis is demonstrating our system at the U.S. Livestock Committee on electronics identification, along with IDI and Texas Instruments. Interesting to learn that T.I. did not bring any product for demo and explained that it was not working as of yet. IDI was shocked when Hannis pulled out our "SEXY" reader and e5500B tag and read the AVID code. . . .   Must expedite this 100 wafer run as we are receiving many orders for product. . . . Please do all in your power to assist us in getting this wafer run expedited sooner than 1st of July, or we are in trouble. Must have wafers at SVI for assembly not later than June 1st, or we might miss our delivery deadline.

*Id.*[5] This is but one of many documents that support the court's finding that Avid was offering its

---

of September 29, 1989. For example, the facsimile number at the top of DTX 11, which is dated September 29, 1989, matches the facsimile number for Avid's home office, which is displayed on Avid's letterhead. *See* DTX 18. It is implausible, under these facts, for Stoddard to assert that he did not at least receive a copy of the article. Moreover, Stoddard offered no explanation as to how the reporter would have arrived at the quotes attributable to him. He also offered no explanation why he and Avid would have maintained a copy of this article for the length of time they did if it were truly inaccurate.

Stoddard also contended that in 1989, Avid was still selling re-labeled chips manufactured by IDI. His testimony in that regard conflicts with sworn testimony he gave in another lawsuit. In that case, he testified that Avid had stopped selling IDI products by 1986 or 1987.

[5] This document, and its recount of Stoddard's demonstration of the new reader and e5500B tag, contradicts Stoddard's February 21, 2006, declaration filed in this court. In that declaration, Stoddard attested that he "did not demonstrate or sell a Standard Reader prior to August 15, 1990." Stoddard testified however, that no other reader could read the Avid code. *See* Brief of Defendants, Exhibit J at 84-85. As such, the Avid document establishes that Stoddard had demonstrated the Avid reader and e5500B chip well in advance of August 15, 1990.

5

Standard Reader and tag for sale in the United States before the critical date of the '326 patent.[6] Such activities are therefore 102(b) prior art.

Avid argues that its Standard Reader and tag incorporating the e5500B integrated circuit were not material to the prosecution of the '326 patent application. Avid's argument confuses anticipation with materiality. "[T]he test for materiality[, however,] is *not* whether there is anticipation or obviousness but, rather, what a 'reasonable examiner would consider . . . important in deciding whether to allow the application to issue as a patent.'" *A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1397 (Fed. Cir. 1986) (quoting 37 C.F.R. § 1.56(a)); *see also Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1380-81 (Fed. Cir. 2000).

In view of the trial record, the court finds Avid's non-materiality argument implausible. At trial, for example, the defendants argued that Avid's Standard Reader and tag incorporating the e5500B integrated circuited anticipated the claims of the '326 patent. This issue, which was submitted to the jury, was the subject of contested expert testimony. The volume of expert testimony and amount of trial time spent in this regard demonstrates that these activities were the closest prior art to the '326 patent's disclosure.[7] A reasonable examiner would find such activity extremely important when evaluating patentability. Therefore, the court finds by clear and convincing evidence that Avid's Standard Reader and tag were highly material to the patentability

---

[6]   *See, e.g.,* DTX 19 (April 11, 1990, facsimile from Doug Hull to Eurosil stating "I have just signed up 4 of the largest animal control municipalities in the U.S., and that demand exceeds 150,000 chips, if I can deliver."); DTX 68 (January 31, 1990 facsimile from Michael Beigel regarding Avid parts stating "we need to expedite things, to have parts for 100 (125) readers before FEB 20.").

[7]   In part because the Standard Reader and tag were the closest prior art to the disclosure of the '326 patent, the court finds that such art was not cumulative to other art that was before the Examiner during prosecution of the application that issued as the '326 patent.

of the '326 patent's claims.

Avid argues that it did not intend to deceive the PTO when it failed to notify the Examiner of its pre-critical date sales activity. "Direct proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances." *Labounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992) (citations omitted). In a facsimile dated October 1990, Beigel wrote the following to Stoddard, "you should check with Dick Bartz our patent attorney whether selling to the public without a special confidentiality agreement before filing European patent applications will invalidate our chances to get a European patent." *See* DTX 27. Additionally, on January 24, 1991, Beigel wrote to Dick Bartz[8] and Stoddard stating, "[h]ere is the new material for the patent application. We're sorry about the delay in sending it, since that puts us all under more pressure." *See* DTX 251. A hand written note on the correspondence indicates that the new material consisted of an operating manual for Avid's reader. *Id.*

The above passages indicate that Beigel and Stoddard were generally aware that prior sales activity would affect their patent rights, and that sales activity had placed them in a time crunch with respect to filing their patent application. This knowledge, combined with the evidence of Avid's pre-critical date sales activities, as discussed above, supports the following findings: 1) that Avid was aware of the consequences of selling or offering to sell its reader and tag before filing the '326 patent application, 2) that Avid attempted to file the '326 patent application in advance of the 102(b) date, *i.e.* within one year after its first sales, but failed, and 3) that Avid intentionally withheld evidence of such sales from the PTO in an effort to deceive the PTO and secure allowance of the

---

[8] Bartz's involvement in the prosecution of the '326 patent is unclear. The above passages are cited as evidence that Avid understood its duty of candor on the eve of filing the '326 patent, as well as demonstrating that Avid knew its sales activity could jeopardize its U.S. patent rights.

'326 patent. Additionally, Avid has put forth no persuasive reason for not disclosing the sales to the PTO. The court therefore finds, by clear and convincing evidence, that Avid acted with deceptive intent during the prosecution of the '326 patent.

Avid argues that Dr. Stoddard did not owe a duty of candor to the PTO because he was not substantively involved in the prosecution of the '326 patent. The court rejects this argument. Dr. Stoddard co-founded Avid, a closely held company, and has served as its president since 1985. *See* Brief of Defendants, Exhibit F. From the company's inception, Stoddard has been involved in all aspects of the company's operation, from marketing and sales, to research and development. For example, Stoddard specifically hired Beigel and Polish to reduce his conceptualized reader system, embodied in the '326 patent, to practice. *See* Brief of Defendants, Exhibit I at 130-132 (trial transcript; examination of Stoddard). Additionally, as explained above, Stoddard was involved in the prosecution of the '326 patent application. *See e.g.,* DTX 27 (discussed above); DTX 251 (discussed above). Stoddard's active involvement in all aspects of Avid supports the court's finding that he was substantively involved in the prosecution of the '326 patent.

Avid finally argues that the testimony of Doug Hull and Richard Fry is unreliable, and therefore should not be relied upon by the court. Hull, for instance, testified that Stoddard had instructed him to destroy documents relating to pre-critical date sales of the Standard Reader and tags. This issue is moot because the court has made its findings without crediting this evidence.

**5.     Conclusion**

In view of the above discussion, the court finds the following: 1) that Avid's Standard Reader and e5500B tag were on sale prior to the critical date of the '326 patent, 2) that Avid's Standard Reader and e5500B tag were highly material to patentability, and 3) that Avid intentionally withheld information from the PTO in an effort to deceive the PTO and obtain allowance of the '326

patent. Having found that the threshold levels of materiality and intent are satisfied, the court has balanced the high level of materiality with the lower level of deceptive intent, and finds that Avid committed inequitable conduct. The court therefore concludes that the '326 patent is unenforceable.

SIGNED this 28th day of September, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE